**NATIONAL BLACK MEDIA COALITION, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

No. 80–1758.

United States Court of Appeals, District of Columbia Circuit.

Argued May 24, 1982.

Decided May 10, 1983.

Jeffrey H. Olson, Washington, D.C., with whom Nolan A. Bowie and Wilhelmina Reuben Cooke, Washington, D.C., were on brief, for petitioner.

Gregory M. Christopher, Counsel, F.C.C., Washington, D.C., with whom Stephen A. Sharp, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., and William F. Baxter, Asst. Atty. Gen., and Barry Grossman, Dept. of Justice, Washington, D.C., were on brief, for respondents.

Before WRIGHT and BORK, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the Court filed by Senior District Judge JAMESON.

JAMESON, Senior District Judge:

Petitioner, National Black Media Coalition (NBMC), seeks review of a decision of the Federal Communications Commission exempting small radio and television license renewal applicants from the requirement of conducting formal surveys to ascertain the problems, needs and interests of their community of license. We affirm the Commission's decision.

## I. HISTORY OF ASCERTAINMENT REQUIREMENT

The Commission issued its first policy statement on ascertainment requirements in *En Banc Programming Inquiry,* 44 FCC 2303 (1960). The Commission required that an applicant for "new facilities, renewal or modification" submit a statement describing the measures taken and efforts made "to discover and fulfill the tastes, needs, and desires of his community or service area." The Commission advised broadcasters that they should consult with members of the listening public and with community leaders, *e.g.,* public officials, educators, and religious, agricultural, business, labor, professional and eleemosynary organizations.

During the next ten years the Commission continued to clarify and refine this requirement. In 1971 it instituted full rulemaking procedures and issued a *Primer on Ascertainment of Community Problems by Broadcast Applicants,* 27 FCC 2d 650 (1971). The *Primer* required all new and renewal applicants to first determine the demographics and the economic, social, racial and ethnic composition of the area of license. Based on those determinations, each applicant was required to conduct two surveys within the six-month period prior to filing an application, to ascertain community "problems, needs and interests", as distinguished from program preferences. The surveys involved (1) interviewing community leaders representing a cross-section of the community as revealed by the compositional study; and (2) interviewing a random

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. IV 1980).

sample of the general community. At the conclusion of the two surveys, the applicant was required to list all problems ascertained and determine which problems merited attention by the station.

## II. THE SMALL MARKET EXEMPTION

Two years after the *Primer* was released, the Commission began to study possible re-regulation of broadcasting. After receiving numerous comments that certain ascertainment procedures were unnecessary, impractical, or unduly burdensome, the Commission issued *Ascertainment of Community Problems by Broadcast Applicants,* 40 FCC 2d 379 (1973) (*Notice of Inquiry*), which solicited advice on whether, among other things, the ascertainment process should differ according to the size of the applicant's market. *Id.* at 380.

Following comments by small market broadcasters that, for them, the formal ascertainment process was an unnecessary and wasteful ritual, and hypothesizing "that the broadcaster in the smaller community knows his town thoroughly, not only its majorities but also its minority elements," *Ascertainment of Community Problems by Broadcast Applicants,* 53 FCC 2d 3, 28 (1975) (*Further Notice*), the Commission established a three-year experimental small market exemption to determine whether the ascertained formalities were in fact unnecessary, unduly burdensome, and not in the public interest. The exemption applied to commercial radio and television license renewal applicants serving communities of less than 10,000 persons and which were outside all Standard Metropolitan Statistical Areas (SMSA's). The exemption became effective on February 6, 1976 and continued for three years.

At the end of the test period the Commission concluded that "no reasons have been presented to alter our initial view that the small market exemption is a desirable refinement of the Commission's ascertainment process." *Ascertainment of Community Problems by Broadcast Applicants: Small Market Exemption,* 78 FCC 2d 444, 448 (1980) (*Small Market Order*).[1] That conclusion was not, however, based on a rigorous statistical evaluation of data obtained as a result of the experiment, because the Commission concluded that "such a costly evaluation process is not warranted" when "weighed against the potential benefits." *Id.* at 447–48. Rather the Commission's decision was based on its finding that "there has been a significant absence of formal protest against [the exempt] licensees." *Id.* at 448.

Prior to the *Small Market Order,* the Commission had initiated a comprehensive radio deregulation proceeding which invited comment upon the desirability of deleting ascertainment formalities for all radio stations. Consequently, the Commission decided to defer final action on the exemption for radio stations until the conclusion of that proceeding, invited further comments, and continued the existing exemptions in the interim. *Id.* at 449. The NBMC filed a petition on July 3, 1980, pursuant to section 402(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(a), seeking review of the *Small Market Order.*

When the radio deregulation proceeding was concluded, ascertainment formalities were deleted for *all* radio broadcasters, *Deregulation of Radio,* 84 FCC 2d 968, *recon. denied,* FCC 81–366 (August 28, 1981). In a separate order the Commission concluded that the deregulation order "moot[ed] the exemption experiment with regard to commercial radio stations," and the Commission affirmed the exemption for small commercial television stations. *Ascertainment of Community Problems by Broadcast Applicants: Small Market Exemption,* 86 FCC 2d 798, 799–800 (1981) (*Television Order*).

---

1. The desirability of the change was based primarily upon a consideration of the regulatory burden imposed on the small broadcast operator by the ascertainment formalities. "Stations in small towns tend to employ fewer people, with less experience and procedural expertise than do stations in larger cities. Tasks and responsibilities for management level personnel are also more numerous at small town stations because of limited management and support staffing. Reduction in the procedural and filing requirements for these stations was considered desirable by those parties favoring the exemption." *Small Market Order,* 78 FCC 2d at 446.

In the *Television Order* the Commission again concluded that a rigorous, scientific analysis of the experiment results "would have been quite costly, ... with no assurance that the data compiled would have provided unambiguous evidence with regard to the outcome of the experiment." *Id.* at 801. The Commission also concluded that "a licensee's failure to familiarize itself with community problems would result in less than adequately responsive programming, and therefore generate public complaints about that programming." *Id.* at 800. Referring again to the data regarding public complaints, the Commission noted that it had "received petitions to deny against ascertainment exempt television stations at a rate of less than one-half of the rate with regard to non-exempt television stations."[2] *Id.* at 801. Concluding that "such figures strongly suggest that exempt stations were doing at least as satisfactory a job of providing responsive programming as were non-exempt stations," *id.*, the Commission made the small market exemption with regard to commercial television stations permanent. *Id.* at 802. It was again pointed out, however, "that the exemption does not relieve television broadcasters involved of their obligation to ascertain the problems, needs and interests of their communities." *Id.*

### III. CONTENTIONS OF NBMC

The NBMC contends that the Commission's exemption of small market licensees from its ascertainment documentation and reporting requirements was arbitrary, capricious and without any basis in the record.

### IV. RADIO DEREGULATION PROCEEDINGS

The Commission's order deleting formal ascertainment procedures for *all radio* broadcasters was upheld by this court in *Office of Communication of the United Church of Christ v. FCC*, No. 81–1032, and related petitions consolidated for review.[3] 707 F.2d 1413 (D.C.Cir.1983). In an opinion entered May 10, 1983, we concluded that the Commission's decision to delete the more formal ascertainment requirements was neither arbitrary nor capricious, and that the Commission had provided an adequate explanation of the reasons for its decision. See Part III–B, Ascertainment Procedures.

### V. TELEVISION ORDER

Since we have affirmed in *Office of Communication, etc., supra,* the decision of the Commission deleting formal ascertainment procedures for *all radio* stations, the only remaining issue is whether the Commission could reasonably conclude that, for *small market television* broadcasters, formal ascertainment procedures were not a prerequisite to achieving the goal of responsive programming. Most of the reasons for upholding the deregulation order for all radio stations are equally applicable with respect to the *Television Order* exempting small market television broadcasters.

In contending that the "Commission has failed to marshal substantial evidence to support its action," NBMC argues that the Commission made the small market ascertainment exemption permanent without conducting its promised studies, but rather relied "on the dubious assumption that 'a significant absence of formal protest against the licensees' meant that the goals of formal ascertainment were still being achieved."

The Commission itself recognized that its approach to the decision created a certain amount of understandable confusion. *Television Order, supra,* 86 FCC 2d at 801. The Commission noted that with "un-

**2.** Petitions to deny license renewal were filed against only seven of the 1900 exempt radio stations (i.e., one-half of one per cent) and two of the 29 exempt television stations (7 per cent). Only two of the nine petitions raised ascertainment issues. Petitions to deny were filed against 2.3 per cent of all radio stations and 15 per cent of all television stations.

**3.** The deregulation order was affirmed in all respects except for those portions relating to program logs. These portions of the order were remanded to the Commission for further inquiry in accordance with this court's opinion.

limited funds and resources" it might have used a "more scientific method" and that its "references to conducting 'an experiment' may have given an impression that such a rigorous, scientific, test was intended." *Id.* Although its 'regret[s]' having given such an impression, the Commission maintains that it did not "enter the test with the intent of designing a highly structured analytical tool.... " *Small Market Order, supra,* 78 FCC 2d at 447. Even had such an intent initially existed, however, the Commission's decision to forego a rigorous statistical evaluation would not invalidate a decision based on valid alternative grounds. The Commission need not have conducted this experiment prior to taking the action it did. Even without the experiment, the Commission complied fully with the rulemaking requirements of notice and comment.

■ The Commission may, of course, grant an application only if it finds "that public interest, convenience, and necessity would be served by the granting thereof .... " 47 U.S.C. § 309(a). The Commission has long recognized that this public interest requires each broadcaster to make "a diligent, positive and continuing effort ... to discover and fulfill the tastes, needs and desires of his service area." *En Banc Programming Inquiry,* 44 FCC 2303, 2312 (1960). Throughout these proceedings the Commission has repeatedly emphasized "that the exemption does not relieve television broadcasters involved of their obligation to ascertain the problems, needs and interests of their communities." *Television Order, supra,* 86 FCC 2d at 802. See also *Further Notice, supra,* 53 FCC 2d at 26; *First Report and Order, supra,* 57 FCC 2d at 435; *Small Market Order, supra,* 78 FCC 2d at 447. The question, then, is whether that obligation will be fulfilled in the absence of formal ascertainment reporting and documentation requirements.

■ As discussed *supra,* the experiment was based on the hypothesis that small market broadcasters know their communities so well that the ascertainment of the community's tastes, needs and desires would be achieved without requiring formal reporting and documentation. See *Further Notice,* 53 FCC 2d at 25–28. Although the evidence offered in support of that hypothesis is not as "scientific" as might be desired, we cannot say that the Commission erred in its resulting conclusions.

The data before the Commission indicated that the rate of petitions to deny exempt television applications was less than half the rate with regard to non-exempt stations. Only two of the nine petitions within the experimental group (both radio and television) raised ascertainment issues. Although the absence of control groups and the failure to analyze pre-experiment data prevent exact statistical conclusions, it does not indicate that the Commission acted unreasonably in concluding that "exempt stations were doing at least as satisfactory a job of providing responsive programming as were non-exempt stations." *Television Order,* 86 FCC 2d at 801.

■ The determinations involved in the Commission's decision were "primarily of a judgmental or predictive nature ... " *FCC v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 813, 98 S.Ct. 2096, 2121, 56 L.Ed.2d 697 (1978). "In such circumstances complete factual support in the record for the Commission's judgment or prediction is not possible or required." *Id.* at 814, 98 S.Ct. at 2121. While the court must satisfy itself that the Commission's exercise of its broad discretion has not been arbitrary and capricious, affirmance is required if a rational basis exists for the agency's decision. *American Radio Relay League v. FCC,* 617 F.2d 875, 879 (D.C.Cir. 1980). Here the Commission has supplied "a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.... " *Greater Boston Television Corporation v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971), 404 U.S. 877, 92 S.Ct. 30, 30 L.Ed.2d 125 (1971), 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

The decision of the Commission is

*Affirmed.*